425 So.2d 375 (1982)
Dora CARTER, Plaintiff & Appellee,
v.
PITT GRILL, INC. and United States Fidelity & Guaranty Company, Defendants & Appellants.
No. 82-409.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
*376 McBride & Foret, Robert R. McBride, Lafayette, for defendants and appellants.
John K. Hill, Jr., Lafayette, for plaintiff and appellee.
Before CULPEPPER, DOUCET and YELVERTON, JJ.
CULPEPPER, Judge.
This is a worker's compensation suit instituted by Dora Carter against her employer, Pitt Grill, Inc., and its worker's compensation insurer, United States Fidelity & Guaranty Company, seeking either permanent partial or permanent total disability benefits as a result of an accident which occurred on or about May 13th or 14th, 1977. From a trial court judgment holding the plaintiff partially disabled and awarding benefits, defendants appeal. Plaintiff answered the appeal, seeking benefits for total and permanent disability.
The issues are whether the trial court erred in finding (1) the plaintiff's claim had not prescribed under LSA-R.S. 23:1209 and (2) the plaintiff's disability is permanent and partial.

FACTS
The parties stipulated that plaintiff's accident occurred during the course and scope of her employment at the Pitt Grill Restaurant in Morgan City. The evidence shows that on or about May 13th or 14th, 1977, Ms. Carter slipped and fell at work, striking her head against the counter before falling to the floor. She testified that she was stunned but not unconscious, and that she continued to work that day but she experienced dizziness, nausea, and double and/or triple vision. She went to work the next day as well, but by the middle of the second day after the accident was having such problems with her vision that she sought help from Dr. J.J. Murtagh, an optometrist in Morgan City. Dr. Murtagh referred her to a Lafayette neurologist, Dr. Goldware, who hospitalized her for a week. Both of these doctors diagnosed the cause of her condition as a concussion and told her there was nothing to do but wait for her symptoms to resolve themselves.
Ms. Carter received compensation benefits from the defendants for a period of six weeks, but payments were terminated after the payment for the week of June 27, 1977. She testified that she was unable to return to work at Pitt Grill because of the headaches and vision problems, and in the meantime she and her family moved to Lafayette.
In March, 1978, the claimant secured a position with the Howard Johnson Restaurant in Lafayette very similar in duties to the job with Pitt Grill. She was in charge of the kitchen and preparing food to be cooked, and was responsible for managing the staff and handling receipts. She also filled in as waitress, dishwasher, or cook *377 whenever necessary. Ms. Carter testified that she became unable to perform the job at Howard Johnson when she began having to stay longer than the eight hours originally agreed upon and fill in when they were short-staffed.
During this time, she stated, she was having more trouble with headaches. Dr. Goldware therefore referred her to Dr. Snatic, a neurologist, who did not feel that she had any significant neurological disease. He was of the opinion that at least some of her symptoms were functional and referred her to Dr. Cole for a psychological evaluation. He also recommended referral to Dr. Norman Anseman for a nerve conduction study and for further physical therapy.
In addition to the job with Howard Johnson, Ms. Carter was later employed by a hospital and also by another restaurant. She stated she had to stop working at the restaurant in October, 1980.
She filed this suit in May, 1980, to which defendants entered a peremptory exception of prescription, which was referred to the merits of the case. After trial on the merits, the district court overruled the defendants' plea of prescription, held that the plaintiff was permanently partially disabled as a result of the accident suffered while working at the Pitt Grill Restaurant and awarded benefits pursuant to LSA-R.S. 23:1221 and 23:1202, subject to a reduction by any wages actually earned by the claimant during this period. From this judgment, defendants have perfected this appeal.

PRESCRIPTION
LSA-R.S. 23:1209 provides in pertinent part:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of partial disability this limitation shall not take effect until three years from the time of making the last payment."
The defendants argue that the trial court erred in applying the three-year prescriptive period as provided for cases of partial disability, and should have applied a period of one year from the date of the last payment. They maintain that the extent of disability for prescriptive purposes should be assessed according to plaintiff's condition during the time in which payments were made. Therefore, they argue, since Ms. Carter received benefits calculated on the basis of total disability for the first six weeks after her accident, the prescriptive period should be one year from the date of the last payment.
The statute is not clear. Jurisprudence from the Courts of Appeal has thus far rejected defendant's contention. The first case was Youngblood v. Belden Concrete Products, 349 So.2d 439 (La.App. 4th Cir. 1977), writ denied 351 So.2d 177 (La.1977), where the court stated:
"The amendment to the statute is somewhat difficult to understand. If interpreted to mean that a plaintiff who alleges a case of partial disability with payments made therefor has three years in which to bring suit, while the plaintiff who alleges a case of total disability with payments made therefor has only one year in which to bring suit, the result seems absurd. The defendant in the case of alleged partial disability could invoke the prescription of one year if he could prove that plaintiff was totally and not partially disabled. A more reasonable interpretation can be found from a reading of the statute as a whole:
* * * * * *
"We interpret the statute to mean that where the parties agreed that the payments were being made for total disability the one year prescriptive period applies *378 but in the absence of such agreement the payments are presumed to be for partial disability with the resulting application of a three year prescription. This seems more realistic in view of the fact that an injured workman normally makes a gradual recovery, i.e., he may be totally disabled at the inception of the period of disability but is only partially disabled just prior to discharge from medical care. Thus, in many cases the last compensation payments are in reality made for partial disability in the absence of an agreement to the contrary."
We followed Youngblood in Miller v. Belden Corp., 386 So.2d 974 (La.App. 3rd Cir. 1980), writ refused 389 So.2d 1126 (La.1980), and in Chapman v. Belden Corp., 414 So.2d 1283 (La.App. 3rd Cir.1982).
Since the record reveals no evidence of any agreement between the parties that the benefits paid were for total disability, the plaintiff's suit was timely filed within the three-year period.

PARTIAL DISABILITY
The trial court found the plaintiff proved by a preponderance of the evidence that she continues to suffer pain as a result of the injury from her 1977 accident. He further concluded that she is permanently partially disabled and can obtain gainful employment, but only in another position. The appellants contend that the evidence as a whole is insufficient to support the finding of permanent partial disability. This argument is based first on plaintiff's history of headaches prior to the accident and, second, on her ability to secure various jobs between the time of her employment with Pitt Grill and the bringing of this suit.
While the plaintiff admits pre-existing severe headaches, she testified these occurred in 1969 and 1970 and were diagnosed as vascular headaches, which were effectively treated at the time and had not troubled her for some time before the accident. She further testified that the ones which have occurred since the accident are in a different portion of the head and are different in intensity and type of pain. The defendants showed no intervening causes of the neck, shoulder and headache pain suffered by the plaintiff since the 1977 accident.
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but the symptoms of the disabling condition appear at the time of the accident and continue to manifest themselves afterward, if the medical evidence shows a reasonable possibility of a causal connection between the accident and the disability. Broussard v. Acadia Industries, Inc., 339 So.2d 48 (La.App. 3rd Cir.1976). Moreover, the factual findings of the trial court, particularly those which involve a determination of the credibility of witnesses, are entitled to great weight. They will not be disturbed unless found to be clearly wrong. Kraemer v. Louisiana Power & Light Company, 393 So.2d 346 (La.App. 1st Cir.1980); Broussard, supra. We feel, after careful consideration of the evidence, that the record furnishes a reasonable factual basis for the trial court's finding that plaintiff's headaches are a result of the accident which occurred in the course and scope of her employment.
The appellants further claim that plaintiff did not show that she is partially disabled because she was able to secure other employment after the accident. Ms. Carter admitted she held three different jobs subsequent to termination of her employment with Pitt Grill. However, she also testified her headaches prevented her from continuing in each of the jobs because they are such that she often has days when she cannot work. She did succeed in holding her last job for over a year, because in the beginning her work as a waitress at the Puddy Tat Restaurant was light and entailed minimum stress. It involved serving only at the counter and a few booths, and the flow of business was steady rather than heavy at particular times during the day. However, when this business moved into a new and larger place and began serving an increased volume of business, Ms. Carter found herself under the same stressful conditions *379 which exacerbated her headache pain.
The record also shows objective medical evidence of significant muscle spasm in Ms. Carter's neck and shoulders, which were the contributing factor to her headaches and also caused pain in and of itself.
If a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980). The determination of the degree of pain is a factual question. It depends to a great extent on the trial court's evaluation of the plaintiff's credibility, because in the final analysis the plaintiff is the one capable of describing his pain. See Kraemer v. Louisiana Power & Light Company, supra. The trial judge was not clearly wrong.

TOTAL DISABILITY
The plaintiff contends by answer to the appeal that the trial court erred in failing to find she is totally and permanently disabled.
It was shown that plaintiff is capable of obtaining gainful employment in other positions which entail less stress than the job she held with the defendant. She herself testified that her condition had improved since she began treatment by Dr. Anseman. There was additional evidence to show that her condition could be further improved by physical therapy, bio-feedback and relaxation techniques. Therefore, she will be able to hold a job involving little stress. For these reasons and those stated above, we conclude that the trial court was not clearly wrong in holding that plaintiff was not totally disabled.
For the reasons assigned, the judgment appealed is affirmed. All costs of appeal are assessed against defendants-appellants.
AFFIRMED.